IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WANDA JACKSON BROWDER,       )
                             )
          Plaintiff,         )
                             )
v.                           )          CASE NO. 2:12-cv-1104-TFM
                             )          [wo]
CAROLYN W. COLVIN,           )
Acting Commissioner of Social Security,  )
                             )
          Defendant.         )

## MEMORANDUM OPINION AND ORDER

Wanda Jackson Browder ("Plaintiff" or "Browder") applied for disability insurance benefits under Title II of the Social Security Act ("the Act"),  42 U.S.C. §§ 401 *et seq*., and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., on March 5, 2010.  R. 21.  After being denied on May 7, 2010, Browder timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on January 6, 2012.[1]  R. 21, 31.  Browder subsequently petitioned for review to the Appeals Council who rejected review of Browder's case on October 26, 2012.  R. 1.  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *Id.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's

---

[1] Browder was determined to be ineligible for supplemental security income benefits under Title XVI due to her husband's income, thus only Browder's disability insurance benefits claim under Title II remained before the ALJ.  R. 43; *see also* Docs. 13 at 1; 14 at 1.

decision.

## I. NATURE OF THE CASE

Browder seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427,

28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Browder, age 56 at the time of the hearing, has completed her high school equivalency diploma, and is able to read and write.  R. 46.  Browder has past relevant work as a housekeeper/cleaner (unskilled, light), retail manager (skilled, light), construction worker (heavy), structural steel worker (skilled, heavy), and auto service station attendant (semi-skilled, light).  R. 29, 61.  Browder's alleged disability onset date

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

is May 11, 2004.  R. 21.  Browder has not engaged in substantial gainful work activity since her alleged disability onset date.  R. 23.  Browder  meets the insured status requirements of the Social Security Act through June 30, 2007.  *Id.*  Browder claims she is unable to work because of lumbar arthritis and disc disease, degenerative arthritis of the right knee, dysarthria/neuralgia, depression, hypertension, and shoulder pain.  *See* Doc. 13 at 3; R. 23.

Browder received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners.  Throughout most of 1998, Browder saw Harold Fuller, Jr., M.D. ("Dr. Fuller") and James L. Head, M.D. ("Dr. Head") for various complaints, but the relevant records relate to Browder's depression and anxiety.  R. 23, 276-87.  On January 5, 1998, Dr. Head diagnosed Browder with severe depression and referred her to Dr. Fuller to be admitted for psychiatric care after several discussions involving marital problems.  R. 287.  Browder was prescribed Zoloft, Trazadone, and Loestrin and discharged on January 7, 1998 after her condition improved. Browder saw Dr. Head again in February and August of 1998 with further complaints of depression due to marital problems.  R. 276, 282.  Dr. Head adjusted Browder's medication, prescribed Xanax, and instructed Browder to seek psychiatric assistance because it was not his field of expertise.  *Id.*

On March 15, 2000, James D. Voreis, M.D. ("Dr. Voreis") began treating Browder for anxiety and depression, and prescribed Paxil and Xanax.  R. 430.  However, on subsequent visits, Dr. Voreis only treated Browder for anxiety, and refilled her Xanax prescription.  *See e.g.* R. 412, 414-16, 418-19, 421, 424, 427-29, 433, 633.

In 2000, Browder complained to Dr. Voreis of right knee pain with a history of past surgeries.  R. 26.  On November 10, 2000, Dr. Voreis reported that an x-ray of Browder's right knee returned normal findings.  R. 26, 585.  Browder returned in June of 2001, again with persistent right knee pain.  R. 26, 425.  Dr. Voreis found her knee to be "stiff," and noted that "I think she's just doomed to arthritic problems with [her] right knee."  *Id.*  Browder began receiving regular steroid injections to her knee, and was prescribed Lortab for pain management.  R. 26, 395, 406, 416, 421-25.

On December 20, 2002, Browder saw Dr. Voreis with complaints of tailbone and back pain.  R. 26, 395.  Dr. Voreis found that Browder has lumbar arthritis and disc disease and her right knee is crepitant.  *Id.*  Browder returned multiple times with complaints of back and knee pain, and on May 14, 2003, Dr. Voreis noted that she "appears to have a left ac separation" after a fall in which she also injured her left shoulder.  R. 26, 389.  Dr. Voreis warned Browder that she might be in pain for the next six weeks, and prescribed her a "full dose pack" of Lortab.  *Id.*  Browder returned for a follow-up on June 18, 2003, and reported that her back is "better," but she still cannot turn quickly to the left.  *Id.*  Dr. Voreis also noted that she was having "less intense pain," as well as normal neurological, neurovascular, and extremity findings.  *Id.*  Browder continued to be seen for chronic back and knee problems and was treated with Lortab pain medication and steroid injections to her knee.  R. 26, 387.

On June 25, 2004, Browder saw Dr. Voreis complaining that the left side of her face and tongue are numb after having a tooth pulled in March.  R. 26, 378.  Dr. Voreis noted that Browder was "somewhat dysarthic," and refilled her Lortab.  *Id.*  Dr. Voreis

also prescribed Elavil for depression; however, he did not note anything pertaining to depression or her mental state.  *Id.*  On September 2, 2004, Browder told Dr. Voreis that she had an appointment with an oral surgeon the following day.  R. 26, 376.  However, she returned on October 20, 2004 with left jaw pain, and Dr. Voreis continued treatment with pain medication.[6]  R. 26, 375.

Throughout 2005, Dr. Voreis continued to treat Browder's back, knee, jaw pain, and anxiety with medication (steroid knee injections, Lortab, and Xanax).  R. 26, 477-85.  On December 16, 2005, Browder finally reported some improvement, stating that the Lyrica had reduced her pain "from a 15 to about a 10 on a scale of 10," and added that she "can actually function now".  R. 26, 477.  Dr. Voreis continued Browder on Lortab and Lyrica.  *Id.*

On February 10, 2006, Browder had a "relapse" with the pain in her jaw and she said she cannot handle the Depo-Medrol knee injections. R. 475.  The remainder of Browder's 2006 visits with Dr. Voreis consists of treatment for a cyst in her throat as well as anxiety and depression due to an impending surgery on the cyst, numerous physical injuries due to accidents around the house, cold symptoms, and sporadic complaints of continued knee and jaw pain.  R. 160-74.

On February 23, 2007, Browder presented with an ongoing complaint of sinusitis. R. 26, 457.  During the visit, Browder said that her prescription for Tegretol has helped relieve her jaw pain.  *Id.*  On March 26, 2007, Browder saw Dr. Voreis after falling off of the side rail of a truck and reinjuring her knee.  R. 26, 455.  Dr. Voreis noted a positive

---

[6] Browder stated that she was unable to proceed with surgery for financial reasons.

straight leg raise, but further noted that her right knee appears stable with no cyanosis, clubbing, or edema.  *Id.*  In April and May of 2007, Dr. Voreis also found that her right knee was still stable, but she was experiencing some jaw pain.  R. 26, 452-54.  Dr. Voreis gave Browder a knee injection and prescribed Lortab for pain management.  *Id.*

After review of the medical records, the ALJ found that Browder has the following severe impairments: lumbar arthritis and disc disease, degenerative arthritis of the right knee, and dysarthria/neuralgia.  R. 23.  The ALJ found that Browder "has the residual functional capacity to perform light work and unskilled work" with no limitations.  R. 25.  The ALJ then found that considering Browder's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform."  *Id.*

## V.  ISSUES

Browder raises two issues for judicial review:

(1)     Whether the ALJ's properly considered Browder's impairments singly and in combination, their severity level, and effect on her ability to perform work under SSR 96-3P, and SSR 96-8P;

(2)     Whether the ALJ improperly rejected the opinion evidence from Browder's long-term treating physician.

*See* Doc. 13 at 7.

## VI.  DISCUSSION

**A.     The ALJ's properly considered Browder's impairments singly and in combination, their severity level, and effect on her ability to perform work under SSR 96-3P, and SSR 96-8P.**

Browder argues that the Commissioner's decision should be reversed because the ALJ failed to properly consider her impairments singly and in combination, their severity level, and the effect they have on her ability to work. *See* Doc. 13 at 7. Specifically, Browder argues that the ALJ improperly determined that her depression and anxiety are non-severe impairments, and completely failed to evaluate her hypertension, left shoulder pain, and intractable/neuropathic jaw pain. *Id.*

i.    *Depression and Anxiety*

Browder argues that although the ALJ did discuss her listed impairments of depression and anxiety, the ALJ erred in finding them to be non-severe impairments. The claimant bears the burden of proving that an impairment meets or equals a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). The United States Supreme Court held that "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria" and that "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Similarly, the Eleventh Circuit held that the claimant:

> Must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.

*Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525 and 404.1526).

Here, the ALJ did a full and thorough evaluation of Browder's diagnoses for depression and anxiety. R. 23-25.  The ALJ ultimately found that "[i]n total, the claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore non-severe." R. 24.  In making this finding the ALJ considered the four functional areas set out in section 12.00C of the Listing of Impairments.  *Id.*; *see* 20 C.F.R., Part 404, Subpart P, Appendix 1.

First, the ALJ found that Browder has no limitation in her activities of daily living, after finding that Browder's daily activities are only limited by her physical, not mental, impairments.  R. 24.  The ALJ found this consistent with her hearing testimony and her application for SSI where she stated that she is able to care for herself and her animals so long as she takes her pain medication.  *Id.*  Next, the ALJ found that Browder only had a mild limitation in social functioning, due to her ability to shop in public places, and visit family, among others, while unaccompanied.  *Id.*  Next, the ALJ found that Browder only has a mild limitation in concentration, persistence or pace due to her testimony that she is able to perform concentration intensive tasks such as watching television, managing her savings account and checkbook, and paying bills.  *Id.*  The ALJ stated that although the findings suggest no limitation, the ALJ gave Browder the "benefit of doubt" and found that she may experience some limitation due to her physical complaints and possible medication side effects.  *Id.*  Finally, the ALJ found that Browder had no episodes of decompensation which have been of an extended duration.  *Id.*  Since Browder's

medically determinable mental impairments cause no more than a mild limitation in the first three functional areas and there were no episodes of decompensation of an extended duration, the ALJ found the impairments to be non-severe. *Id.*

Despite bearing the burden to present "specific medical findings that meet the various tests" when challenging the ALJ's determination on the severity of an impairment, Browder offers nothing other than a simple statement that the ALJ "dismissed" her impairments of depression and anxiety. *See* Doc. 13 at 7. This statement does not provide the Court with a proper analysis as to how the ALJ erred, and it is clear from the record that the ALJ carefully and thoroughly reviewed Browder's depression and anxiety in compliance with the law. The Court finds that the ALJ's determination on the severity of Browder's impairment for depression and anxiety is supported by substantial evidence.

    *ii.    Hypertension*

Browder avers that the ALJ completely failed to evaluate her hypertension; however, this argument fails because Browder never raised nor presented evidence that hypertension is a severe impairment. The burden of proof rests on a claimant through Step 4. *See Phillips*, 357 F.3d at 1237-39. Thus, at step two in the sequential evaluation the burden is on the claimant to establish that she has a severe impairment or combination of impairments. *Street v. Barnhart*, 133 Fed. App'x 621, 627 (11th Cir. 2005). The Eleventh Circuit has held that an ALJ "is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Id.* (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir.1996)).

Here, Browder wholly fails to raise hypertension as a listed impairment in both her application for SSI as well as in her hearing testimony where she was represented by counsel.[7] *Id.* 627-28 (holding that the ALJ did not err when he failed to consider an impairment because the claimant failed to put "the ALJ on notice" due to the claimant's own failure to raise the issue in their application or at the hearing before the ALJ). Therefore, the ALJ's failure to consider Browder's hypertension does not constitute reversible error.

### iii.    *Intractable/Neuropathic Jaw Pain and Left Shoulder Pain.*

Browder avers that the ALJ completely failed to discuss her intractable or neuropathic jaw pain, and instead only found a severe impairment of dysarthria/neuralgia. *See* Doc. 13 at 7-9.  Browder points to the medical records to support her contention that she has had jaw pain dating back to 2004 that "represents much more than a loss of clear speech as the ALJ apparently represents with his finding of dysarthria/neuralgia."  *See* Doc. 13 at 8.  Browder's argument is without merit.

The ALJ found that Browder suffers from the following severe impairments: "lumbar arthritis and disc disease, degenerative arthritis of the right knee, and dysarthria/neuralgia."  R. 23.  Not only did the ALJ discuss Browder's jaw pain, he found it to be a severe impairment.  While dysarthria is defined as a "disturbance of speech due to emotional stress, to brain injury, or to paralysis, incoordination, or spasticity of the muscles used for speaking," neuralgia is defined as "[p]ain of a severe, throbbing, or

---

[7] Browder was represented by counsel at the hearing before the ALJ, thus, the ALJ was not under a heightened duty to develop the record.  *See Brown v. Shalala*, 44 F.3d 931, 934–35 (11th Cir.1995).

stabbing character in the course of distribution of a nerve." *Stedman's Medical Dictionary* 550, 1206 (27th ed. 2000).  So although the ALJ did find that Browder suffers from a loss of speech, the ALJ also very clearly found that the nerve pain in Browder's jaw is also a severe impairment.  In fact, the ALJ discussed Browder's jaw pain at length.  R. 28.  Therefore, Browder's argument is without merit, and the ALJ fully discussed Browder's jaw pain and found it to be a severe impairment.  The ALJ's findings are supporting by substantial evidence.

    iv.    *Left Shoulder Pain*

    Finally, Browder argues that the ALJ completely failed to discuss her left shoulder pain, but does not point to any evidence that shows that she was disabled during the relevant time period.  Browder's argument here is also without merit.  The ALJ clearly did discuss Browder's left shoulder pain.  One of the main issues before the ALJ is whether Browder was disabled during the relevant time period.  This case was complicated by the fact that just a few months after the date Browder was last insured, she was in a car accident that likely left her disabled.  Unfortunately, the ALJ is not able to consider any impairments that arose after the date Browder was last insured and must stay within the relevant time period.[8]  The ALJ found that Browder's "left shoulder trauma occurred in the accident in September 2007, again after the date last insured."  R. 28.  Upon review of the record the Court agrees.  During the relevant time period,

---

[8] Browder stated that although she filed concurrent claims under both Title II and XVI, due to her husband's income she was ruled ineligible for Title XVI benefits.  R. 42-43.  However, at the hearing, Browder testified that her husband's income has become more unstable in recent years.  R. 47.  The claimant should note that should her husband's income lower to the point that she becomes eligible for Title XVI benefits, she can reapply and her impairments that have arisen since the September 2007 car accident will be considered.

Browder's chief complaints were related to her jaw, back, and knee pain, as well as depression and anxiety.  On one isolated occasion during the relevant time period on May 14, 2003, Browder sought treatment from Dr. Voreis related to shoulder and back pain after falling down.  R. 389.  It was not until the September 2007 car accident where Browder suffered a left clavicle fracture that she began to lose ten to fifteen degrees of rotation in her shoulder, and grip strength, as well as chronic left shoulder pain.  R. 578.

Again, the burden is on the claimant to establish that she has a severe impairment or combination of impairments.  *Street*, 133 Fed. App'x at 627.  A simple statement that the ALJ failed to discuss the issue, especially where he has actually done so, is not sufficient to convince this Court that there is reversible error.  The ALJ discussed Browder's left shoulder pain, found that it was caused by an accident that occurred after the date last insured, and there is substantial evidence to support the ALJ's finding.

**B.**   **The ALJ properly rejected the opinion evidence of Browder's long-term treating physician.**

Browder argues that the Commissioner's decision should be reversed because he "discarded the opinion evidence of Dr. Voreis, clearly stating that the claimant had been disabled to work from 2004."  *See* Doc. 13 at 8.  Specifically, Browder argues that Dr. Voreis' opinion is the only opinion evidence in the record and it is "well supported by the extensive treatment records and testimony."  *See* Doc. 13 at 9.  Browder avers that when the ALJ "expressed discontent with the opinion forms and narrative, the physician completed an addendum statement for clarification."  *Id.*  Browder states that despite the addendum complying with the ALJ's request, the ALJ still rejected Dr. Voreis opinion

evidence, and she asserts that the ALJ already "had made up his mind to disregard the evidence and deny the claim and did so even in the face of the treatment records and treating source opinion," asserting animus on the part of the ALJ. *Id.*

"An administrative law judge must accord 'substantial' or 'considerable' weight to the opinion of a claimant's treating physician unless "good cause" is shown to the contrary." *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)). However, the Eleventh Circuit has also held "[t]he law is clear that, although the opinion of an examining physician is generally entitled to more weight [. . .], the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). In rejecting a treating physician's opinion, the ALJ "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *MacGregor*, 786 F.2d at 1053.

On January 4, 2011, Browder's treating physician Dr. Voreis completed a Social Security Disability Examination on Browder's behalf stating that Browder suffers from the following:

> 1) She has had intractable jaw pain from one tooth being pulled. The pain is excruciating. This is only partially controlled with narcotics. It is terribly distracting. 2) Severe degenerative arthritis of the right knee. Any type of weight bearing gives her excruciating pain. 3) Left shoulder injury from motor vehicle accident in 2007 that has been scheduled for surgery, but was never repaired because of insurance issues. She has virtually no use of her left shoulder whatsoever. She is developing a left wrist drop. She has just had a severe left shoulder crush injury and has severe pain in conjunction with this injury as well.

R. 353. Dr. Voreis ultimately opined that the combination of these impairments prohibit

Browder from working an eight hour day and forty hours per week, and her pain has been disabling since 2004.  R. 354.  The ALJ stated that he "acknowledges the opinions provided by Dr. Voreis [. . .], dated January 4, 2011" that state that Browder is unable to perform less than a full range of sedentary work; however, the ALJ "has not given these opinions any weight because they fail to differentiate the limitations from claimant's impairments before and those after he date last insured."  R. 27.  The ALJ noted that Browder's "left shoulder trauma occurred in the accident in September 2007, again after the date last insured."  R. 28.

As a result Dr. Voreis submitted an addendum on December 14, 2011, stating that Browder's most disabling impairment "stems from complications of having a tooth pulled in Florida."  R. 738.  Dr. Voreis also opined that:

> The jaw pain was unbearable for her for several months.  Also, beginning shortly after the tooth extraction, I feel that for approximately two years the jaw pain was so severe that it would have kept her from working 8 hours a day or 40 hours a week.  If she were to take enough medication to control the pain, the side effects of the medication would have made her unable to concentrate and unable to stay awake. [. . .]  The patient does not mention her jaw pain as much as she used to; the biggest reason, I believe, is because we have had adequate samples of Lyrica for her and she now has prescription coverage for this. [. . .]
>
> I feel that certainly from 2004 through 2006 and probably even 2007, her jaw pain would have resulted in significant absenteeism as well as significant inability to work because of medication side effects.

R. 738.  The ALJ assigned Dr. Voreis' opinion letter no weight "because it is inconsistent with the objective findings of record and his own treatment of the claiming, during the relevant time period."  R. 28.

The Social Security Administration ("SSA") has spoken to the issue of the weight

of treating sources:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."

20 C.F.R. § 416.927(c)(2), 404.1527(c)(2).  Similarly, this Court has found that the ALJ has the "discretion to weigh objective medical evidence and may choose to reject the opinion of a treating physician."  *Gholston v. Barnhart*, 347 F. Supp.2d 1108, 1114 (M.D. Ala. 2003); *see also Fries v. Comm'r of Soc. Sec. Admin.*, 196 Fed. App'x 827, 833 (11th Cir. 2006) (holding that an ALJ may, by showing good cause, give minimal weight to a treating physician's opinion that a claimant is disabled when that opinion is "inconsistent with other evidence in the record.")

Here, the ALJ supported his rejection of Dr. Voreis' opinion letter with a series of objective evidence which tends to refute that Browder is disabled, most of it from Dr. Voreis' own records.  R. 28.   The ALJ found Dr. Voreis' opinion letters to be "inconsistent with the objective findings of the record and his own treatment of the claimant, during the relevant time period."  R. 28.  The ALJ noted that in December of 2005 and February of 2007, Browder reported that her medications (Lyrica and Tegretol) helped her pain and she said that she "can actually function now."  R. 28, 457, 477.  The ALJ found these records to be consistent with Browder's hearing testimony where she

"confirmed that her medications were helpful prior to the date last insured and that she could perform generally normal activities, and had no medication side effects."  R. 28, 53-55.  The Court finds that the ALJ articulated good cause for rejecting Dr. Voreis' opinion letters.  *See Green v. Comm'r of Soc. Sec.*, 223 Fed. App'x 915, 923 (11th Cir. 2007) (finding that the ALJ had good cause to reject the opinion of the claimant's treating physician because the opinion conflicted with his medical records and with the claimant's testimony that her medication "eases [the pain] off"); *Peters v. Astrue*, 232 Fed. App'x 866, 871 (11th Cir. 2007) (holding that the ALJ articulated good cause for rejecting treating source opinions, especially considering inconsistencies between the treating notes and the disability evaluations).

The ALJ also noted that in instances where the physician's opinion letter substantially departs from the rest of the evidence of record, it is likely motivated by other factors such as sympathy for the claimant, desire to help the claimant, or even persistence on behalf of the claimant that he form a particular opinion. R. 28.  The ALJ noted that there is no evidence to conclusively confirm the motives in the instant action, but rather it is another reason to not assign the opinion letter controlling weight.  *Id.*

Finally, the ALJ stated Social Security Rulings 96-2p and 96-5p "provide that a physician's opinion on issues given to the Commissioner of Social Security is never entitled to controlling weight or special significance, because the ultimate decision of disability is reserved for the Commissioner."  *Id.* (citing SSR 96-29; SSR 96-5p).  The ALJ correctly noted that Dr. Voreis' opinion that Browder is unable to work is reserved to the Commissioner, and thus not a medical opinion afforded controlling weight.  *Lanier*

*v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(e) (explaining that a physician's opinion that a claimant is "disabled" or "unable to work" is not a medical opinion and that this opinion is reserved exclusively to the Commissioner)).

Therefore, the Court finds that the ALJ properly weighed the evidence in the record, and substantial evidence supports the ALJ's findings.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.

DONE this 3rd day of September, 2014.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE